# United States Court of Appeals
## For the First Circuit

No. 24-1482

CASANDRA ANN HERNÁNDEZ,

Plaintiff, Appellant,

v.

TODD BLANCHE, ACTING ATTORNEY GENERAL,[*]

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Aframe, Hamilton[**], and Thompson,
Circuit Judges.

Bámily López-Ortiz, with whom Lizabel M. Negron-Vargas was on brief, for appellant.
Gabriella S. Paglieri, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

July 7, 2026

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche has been substituted for former Attorney General Merrick B. Garland.

[**] Of the Seventh Circuit, sitting by designation.

THOMPSON, **Circuit Judge**.  Many state and federal labor laws are enacted to protect employees, ensure fair treatment of employees, and afford processes by which employees can challenge adverse employment decisions.  One such law is Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, which can be deployed against certain instances of workplace discrimination and retaliation.  Another is the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, which provides an added layer of protection for federal government employees.  Before us again,[1] Casandra Ann Hernández alleges discrimination in the form of retaliation and unreasonable termination while invoking these federal laws, and appeals the United States District Court for the District of Puerto Rico's decision to grant summary judgment for her former employer, the Drug Enforcement Agency ("DEA") of the United States Department of Justice ("DOJ") (collectively "the government").  After meticulous perscrutation of the record and briefs, we affirm.

## I. Background

"Because our review follows the entry of summary judgment, 'we take the facts and the reasonable inferences therefrom in the light most' favorable to the non-moving part[y]."

---

[1] Though we do cover some relevant snippets from her first appearance before the First Circuit, see Hernández v. Wilkinson, 986 F.3d 98 (1st Cir. 2021), for a more detailed overview.

- 2 -

President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co., 77 F.4th 33, 35 (1st Cir. 2023) (quoting Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 3 (1st Cir. 2023)). And because this is appeal number two for Hernández implicating, in part, the same or similar facts as appeal number one, "the facts that we recount are either undisputed or based upon supportable findings made in [the] earlier cases." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 720 (1st Cir. 2022); see also Hernández, 986 F.3d at 100; Hernández v. Barr, No. CV 17-2280-BJM, 2019 WL 1459916, at *3 (D.P.R. Mar. 29, 2019). We therefore "sketch the relevant facts and the tangled litigation history with as much brevity as the issues on appeal permit." Emigrant Residential LLC, 37 F.4th at 720.

## A. The Facts

For over 20 years, Hernández worked in various secretarial and administrative roles in the Ponce, Puerto Rico office of the DEA. She provided administrative support to many of the office's leadership, eventually working her way up the ranks to become the Secretary to the Assistant Special Agent in Charge of the office. In that role, Hernández supported her direct supervisor, Assistant Special Agent in Charge Dave E. Joseph and distributed cash funds to DEA agents for their day-to-day operations. While Joseph was her direct supervisor, Hernández's secondary supervisor was the Special Agent in Charge, a position held by Matthew Donahue until December 2017.

- 3 -

All was well for Hernández in the DEA Ponce office until September 2016. Hernández, 986 F.3d at 101. After fracturing a bone in her foot, Hernández requested several accommodations from Joseph. Id. Some requests, like a new parking spot and schedule, were approved. Id. Other requests, including her request for advanced sick leave, were denied. Id. Similarly, Donahue turned down some of Hernández's requests, including a transfer back to her old duty office -- a demotion that Hernández was willing to accept to avoid the mounting conflicts she was having with Joseph. Id. Because of the denials, Hernández filed a complaint against Joseph and Donahue in November 2016 with the DEA's Equal Employment Opportunity Office ("EEO") alleging discrimination based on her disability from the bone fracture and her nationality as a Puerto Rican. Id.

In June 2017, Hernández was notified that several DEA agents (excluding Joseph and Donahue) had filed an EEO complaint against her, and shortly thereafter, she filed a complaint with the DOJ's Office of the Inspector General ("OIG"), claiming that Joseph was seemingly retaliating against her by proxy through those other DEA agents for filing an EEO complaint. Tensions continued to rise in the Ponce DEA office, and a few months later, Hernández and DEA Special Agent Phillip Jones got into a verbal altercation regarding an audit of the funds that Hernández was distributing. Id. Hernández later reported the incident to the EEO as sexual

harassment and filed a police report with the Puerto Rico Police Department against Jones for verbal assault and disturbance of the peace (the "criminal complaint"). Both Hernández and Jones were reprimanded, and Hernández was temporarily assigned to the DEA office in San Juan. Id.

In mid-October 2017, Hernández experienced another employment episode. Id. Donahue revoked a permit she had been granted to perform outside employment, purportedly because he worried that it interfered with her availability to work and perform her duties. Id. Despite this revocation, Hernández continued to partake in outside work activities -- selling baked goods to a local business. Consequently, she was suspended for eight days and warned that "any further infraction will result in more severe disciplinary action." A month later, Hernández took additional medical leave. In response, Donahue and an Assistant Special Agent in Charge familiar with the ongoing issues between Hernández and her supervisors asked her to communicate with Joseph either by phone or in person regarding the status of her medical leave, seeing as she had stopped coming into work and had failed to directly notify Joseph of her absence despite being asked to do so on numerous occasions.

When Hernández returned to work in January 2018, she was assigned to the DEA office in San Juan. By this time, Donahue and Joseph were no longer in Hernández's orbit. Donahue had left

Puerto Rico altogether and Joseph was no longer her supervisor. Hernández, 2019 WL 1459916, at *8.

## B. Procedural History

### Chapter 1: *Hernández I*

Prior to her return to work, Hernández sued her employer in federal district court on November 6, 2017, (the "2017 lawsuit") alleging that she was discriminated against based on her sex, national origin, and disability, and that her supervisors retaliated against her for complaining to the EEO. Id. After the court found that there was insufficient evidence to support her claims and granted summary judgment in the government's favor, Hernández timely appealed the sex discrimination and retaliation claims to this court. Hernández, 986 F.3d at 102.

We ultimately affirmed the district court's decision, concluding that Hernández did not provide enough evidence to sustain either cause of action. Id. at 102-03. In our de novo review of her claims we reasoned, in sum, as follows.

For the sex discrimination claim, Hernández alleged that Joseph "used the video camera in her office to watch her" and that he "leered at her." Id. at 102. But we determined that she didn't put forward evidence to support the frequency and intensity needed to turn mere staring at an employee into the basis of a hostile work environment claim. Id. To the extent that this claim included Jones (the DEA agent mentioned previously in the audit

dispute) we found that his conduct did not constitute sexual harassment because of Hernández's admission that the verbal altercation between them was an isolated incident.  Id.

As for the retaliation claim, Hernández argued on appeal that her temporary assignment to the San Juan office was done in retaliation for the EEO complaint she had filed in November 2016. Id. at 103.  This retaliation, she contended, violated Title VII. Id.  We found that the record didn't contain "evidence to show that her EEO complaint was a but-for cause of that temporary detail."  Id.  So, again, we affirmed the district court's decision, ending that case.  Id.

## Chapter 2: Lingering Disputes

But as that litigation was ongoing, and after Hernández had noticed her appeal to this court, issues at the DEA Ponce office continued to boil over.  Eventually, the DOJ's Office of Professional Responsibility ("OPR") initiated an investigation into Hernández.  The result -- she was terminated from federal service on two grounds: (1) insubordination because she allegedly refused to communicate with Joseph either in person or by phone as instructed by Donahue, and (2) lack of candor because she didn't candidly answer OPR's questions during the investigation.

Hernández appealed her termination to the Merit Systems Protection Board ("MSPB"), as is her right under the CSRA.[2] She maintained that her termination was retaliatory for her filing a criminal complaint against Agent Jones, her EEO activity, and the 2017 lawsuit against her employer -- all of which she asserted were protected activities under Title VII.

But the MSPB affirmed Hernández's removal from federal service. Although it found that Hernández, to her credit, did not exhibit a lack of candor with OPR when she recounted the events leading up to her termination, it nonetheless concluded that (1) the government's insubordination charge against Hernández had been proven and (2) Hernández's termination was not unreasonable.

### Chapter 3: The Discovery Skirmish

So Hernández sought judicial review of the MSPB decision and thus filed another suit in the district court that culminated in today's appeal. Before the district court, she claimed that the government violated Title VII and the Civil Rights Act of 1991. She also alleged that her termination for insubordination wasn't supported by a preponderance of the evidence and was unreasonable. Her complaint built upon the same facts and issues alleged in her

---

[2] We'll have more on this later, but the need-to-know for now is that the MSPB is an "independent adjudicator" created by Congress "to review certain serious personnel actions against federal employees," including decisions to terminate them. Kloeckner v. Solis, 568 U.S. 41, 44 (2012); Perry v. Merit Sys. Prot. Bd., 582 U.S. 420, 422 (2017).

2017 lawsuit with the added avowals that the OPR investigation was part of Joseph and Donahue's "retaliation plan" that sowed the seeds for her consequent termination from federal service. But for the criminal complaint she filed against Jones, her EEO complaints, and the 2017 lawsuit, Hernández contended, she wouldn't have been terminated on account of "discriminatory retaliatory *animus*" in violation of Title VII.

Hernández eventually filed a motion to compel discovery specifically requesting:

(1) Copies of Notification of Personnel Action forms (known among federal government employees as the SF-50) for all new hires, transfers, retirements, resignations, and personnel in Hernández's division from August 2015 to August 2020;

(2) Copies of all EEO complaints filed against Joseph and Donahue;

(3) Copies of any complaints filed against Joseph and Donahue with the OIG from January 2016 to August 2020;

(4) All emails that Joseph and the OIG had sent to Donahue about Hernández from January 2016 through December 2017; and

(5) The official phone number used by Donahue.

The government partially complied with Hernández's request but requested an extension of time to provide more. Specifically, the government produced Donahue's official phone number but argued that emails requested between January 2016 through December 2017 pertained to facts that were already adjudicated in the 2017 lawsuit. It also interposed legal objections to some of the requests such as privilege, confidentiality, overbreadth, and relevancy. Likewise, it objected to producing notifications and complaints of other employees (items one through three) as those were protected by the Privacy Act, 5 U.S.C. § 552a. Presumably to rectify the situation, the government informed the district court that it propositioned Hernández to meet and confer regarding the information it declined to produce, but Hernández never responded.

Given the government's response, the court deemed Hernández's motion to compel unopposed, granted it, and denied the extension request.

The government then filed a motion to strike Hernández's requests for discovery because she failed to comply with Local Rule 26(b).[3] In turn, Hernández sought the remaining information

---

[3] In the District of Puerto Rico, Local Rule 26(b) generally states that a judicial officer is prohibited from considering a discovery motion that doesn't include a certification that the moving party made a reasonable and good faith effort to meet and confer with opposing counsel regarding their request for discovery. See L.Cv.R. 26.

through a motion for sanctions and discovery order ("motion for sanctions"), contending the government's objection was unwarranted and, with the deadline for filing dispositive motions just two days away, declaring the information she sought was crucial to her ability to oppose any such motion. But a few days later, rather than respond to Hernández's sanctions motion, the government moved for summary judgment. In support, it argued that the criminal complaint was not protected activity, Hernández's EEO complaints were dismissed and too remote from her time of removal to be the basis for her allegations of retaliation, and that her removal was solely based on charges of insubordination and lack of candor for consistently disregarding DEA policy and her supervisors' instructions.

In a last-ditch effort to ascertain items one through three from the list above, Hernández filed a motion under Federal Rule of Civil Procedure 56(d) (the "Rule 56(d) motion").[4] See Fed. R. Civ. P. 56(d). Through this motion, she requested that the district court defer its decision on the government's summary judgment motion until she could obtain this additional information. As per her Rule 56(d) motion and in a statement filed by Hernández's counsel under penalty of perjury, she sought this information because it provided a record "of the individuals she

---

[4] A comprehensive overview of a Rule 56(d) motion is soon to come.

- 11 -

accuses of discrimination and retaliation [and] to search for evidence that they have a record of similarly offensive or improper conduct and are more likely to engage in the same behavior towards her." Such information, she urged, would prove or disprove the allegations contained in her complaint and was essential to opposing any summary judgment motion. In any event, she added, the district court had at that point already granted her motion to compel discovery. The government's filing of its motion for summary judgment without providing her with the information she had requested in her motion to compel was yet another example of its efforts to blatantly disregard her need for information that could potentially help prove her allegations. Hernández's counsel added that the requested information would help clarify the government's misinterpretation of the factual record as presented in its summary judgment motion.

The government objected. In its response to Hernández's motion, the government resisted Hernández's notion that the requested information was necessary to salvage her claims and oppose its summary judgment motion. Moreover, it argued that Hernández was engaging "in a fishing expedition" while disregarding the particular requirements of Rule 56(d) to articulate with specificity the reasons for her discovery requests and what facts she was in pursuit of.

Apparently, the district court, unconvinced of Hernández's need for additional discovery, reversed course on its order to compel, revisited the government's previously-filed objection, and denied her sanctions motion. It reasoned that Hernández repeatedly failed to comply with the meet and confer requirements under Local Rule 26(b) and Federal Rule of Civil Procedure 37(a).[5] This alone, the district court held, was sufficient for it to act on its discretion and deny the motion for sanctions. It added that the case was limited to Hernández's challenges against her removal from federal service and had nothing to do with the previously litigated and dismissed (with prejudice) claims of discrimination and hostile work environment under Title VII. Accordingly, the district court held that Hernández's discovery requests must be limited to her claims of retaliation in the form of wrongful termination. In consequence of that ruling, it denied the Rule 56(d) motion as moot and thus, had no reason to address the adequacy of a Rule 56(d) showing.

And with all of that procedural ping-ponging in the backdrop, the district court ordered Hernández to respond to the

---

[5] Under Federal Rule of Civil Procedure 37(a)(1), a motion to compel discovery must include a "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See Fed. R. Civ. P. 37. It is complementary to Local Rule 26(b) in the District Court of Puerto Rico, which encompasses the same requirements. See L.Cv.R. 26.

government's summary judgment motion, which she did. What she filed, though, was a memorandum objecting to the court's order denying her Rule 56(d) request. While declining to seek reconsideration, Hernández instead asked the court to consider her arguments when evaluating the government's summary judgment motion.

In due course, the district court granted the government's summary judgment motion. More specifically, it held that Hernández failed to establish a prima facie case of retaliation, and even if she had done so, it concluded the government terminated her for nondiscriminatory reasons which she failed to prove were pretextual and retaliatory. The court likewise found that although Hernández's EEO activity and 2017 lawsuit were indeed protected conduct under Title VII, those instances occurred too remotely from her termination to support a finding that the government retaliated against her based on that conduct. In its final point, the district court dismissed Hernández's case under the CSRA and determined that the MSPB's affirmance of Hernández's termination was justified given the evidence of her insubordination and of her inability to produce evidence that the stated reason for her termination was pretextual. And to close the curtains on the matter, the district court dismissed Hernández's case with prejudice. Hernández timely appealed.

## II. Discussion

Before us, Hernández now argues that the district court erred because it (1) denied her Rule 56(d) motion and (2) granted summary judgment for the government on the basis that (a) she didn't establish a prima facie case of retaliation under Title VII and (b) the MSPB's decision was proper. We take each in turn, and as we do so, we provide the necessary legal background that guides our decision to affirm the district court in full.

### A. The Rule 56(d) Motion

Up first is Hernández's lamentation that the district court abused its discretion when it denied the Rule 56(d) motion as moot.

"We review the disposition of a Rule 56(d) motion for abuse of discretion."[6] Emigrant Residential LLC, 37 F.4th at 724. But before we unearth the contents of Hernández's Rule 56(d) motion and endeavor to determine whether the district court abused its discretion in denying it, we must first review the requirements of this "procedural 'escape hatch.'" Mattoon v. City of Pittsfield,

---

[6] Prior to 2010, Rule 56(d) was known as Rule 56(f). We therefore "treat cases decided under former Rule 56(f) as authoritative when deciding post-2010 cases arising under Rule 56(d)." Emigrant Residential LLC, 37 F.4th at 724; see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

980 F.2d 1, 7 (1st Cir. 1992) (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988)).

"Rule 56(d) allows, in certain circumstances, for supplemental discovery after a motion for summary judgment has been filed." Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014). It provides:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The rule serves as "a safety valve for claimants genuinely in need of further time to marshal 'facts, essential to justify [their] opposition . . . to a summary judgment motion.'" Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995) (alteration in original) (quoting Mattoon, 980 F.2d at 7). And in doing so "[i]t protects a litigant who justifiably needs additional time to respond in an effective manner" to a motion for summary judgment. In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (quoting Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 28 (1st Cir. 2013)).

"In the mine-run of cases, the crucial inquiry under Rule 56(d) is whether the movant has had a full and fair

opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion." Emigrant Residential LLC, 37 F.4th at 724.  Notwithstanding "the salutary purposes underlying Rule 56[(d)]" and our directive to the district courts to "invoke the rule generously," In re PHC, Inc. S'holder Litig., 762 F.3d at 143, it doesn't afford the movant carte blanche in discovery disputes nor is its relief granted as a matter of course. See Hicks, 755 F.3d at 743.  A party seeking additional discovery through a Rule 56(d) motion must provide the court with

> a timely statement -- if not by affidavit, then in some other authoritative manner -- that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Vélez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). If the party can't adduce the facts essential to oppose a motion for summary judgment because of purported incomplete discovery, as is the scenario here, "the party's explanation . . . should: (i) 'show good cause for the failure to have discovered the facts sooner'; (ii) 'set forth a plausible basis for believing that specific facts . . . probably exist'; and (iii) 'indicate how the emergent facts . . . will influence the outcome of the pending summary judgment motion.'"  In re PHC, Inc. S'holder Litig., 762

- 17 -

F.3d at 143 (quoting <u>Resolution Tr. Corp.</u> v. <u>N. Bridge Assocs.,</u> <u>Inc.</u>, 22 F.3d 1198, 1203 (1st Cir. 1994)).

We have categorized these requirements as a five-factor analysis considering "authoritativeness, timeliness, good cause, utility, and materiality." <u>Id.</u> at 144. And in our review of a Rule 56(d) matter, we have recognized the district courts are afforded considerable discretion "with respect to the interplay of these five elements," understanding that one or more of these requirements can be flexible, depending on the circumstances of a given case, and may be relaxed or excused to meet the exigencies of that case. <u>Emigrant Residential LLC</u>, 37 F.4th at 725.

With those instructive principles in mind, we peruse Hernández's Rule 56(d) motion and her counsel's statement under penalty of perjury to assess whether she fulfilled the aforementioned necessary requirements and, in turn, whether the district court abused its discretion in denying her Rule 56(d) motion as moot.

As a reminder, here are the things that Hernández's Rule 56(d) motion sought:

> (1) Copies of Notification of Personnel Action forms (the SF-50) for all new hires, transfers, retirements, resignations, and personnel in Hernández's division from August 2015 to August 2020;

(2) Copies of all EEO complaints filed against Joseph and Donahue; and

(3) Copies of any complaints filed against Joseph and Donahue with the OIG from January 2016 to August 2020.

On appeal, Hernández chronicles her many attempts to obtain this information and insists that she satisfied the requirements needed for her Rule 56(d) motion to succeed. Hernández further avers that the requested information was (1) necessary to mount an effective opposition to the government's summary judgment motion, (2) relevant to determining whether the government was "discriminatory and/or retaliatory" by removing her from her position, and (3) demonstrative of the government's knowledge that her supervisors "were acting in a retaliatory manner that created a hostile work environment because they had a prior record of such conduct."

The government paints a different picture. It contends that, far from meeting the obligations required of a movant, Hernández failed to make any of the requisite showings emblematic of a successful Rule 56(d) motion. In support thereof, the government offers three reasons: (1) Hernández didn't show good cause for not having discovered the facts she sought sooner and had a full and fair opportunity to attain those facts in the 2017 lawsuit because the information she seeks pertains to events that

occurred before or during the litigation; (2) the motion lacked a plausible showing that the requested information existed; and (3) the information within the requested discovery was irrelevant to Hernández's retaliation claim and, therefore, her reasons for requesting additional discovery were insufficient to show how the discovery would influence the outcome of the summary judgment motion.

Before we explain why the district court didn't abuse its discretion in denying Hernández's Rule 56(d) motion, we'll briefly recap the district court's reasoning for denying it. Recall that the district court denied Hernández's Rule 56(d) motion[7] because (1) she repeatedly failed to abide by Local Rule 26(b), and (2) the case before it was whether the government retaliated against Hernández in the form of wrongful termination. It added that the government demonstrated good faith efforts to comply with its discovery obligations, and it was Hernández who failed to reply to the government's objections to their ongoing discovery disputes.

Let's focus first on the court's first justification. Indeed, the motion to compel discovery, the motion for sanctions, and the Rule 56(d) motion all lacked a certification that Hernández

---

[7] We have come a long way through this case, so we note again that the district court denied Hernández's Rule 56(d) motion as moot by way of denying her motion for sanctions against the government.

conferred in good faith with the government in an effort to obtain the information at issue without court intervention. See L.Cv.R.26(b); see also Fed. R. Civ. P. 37(a)(1). Hernández provides us with no explanation for why she neglected to do so. Instead, she tells us of the many efforts she made to reach out to government counsel to confer about the requested materials but to no avail. Though (to quote Hernández's brief citing Carmona v. Toledo, 215 F.3d 124, 135 (1st Cir. 2000)) "[a] party seeking discovery expeditiously is not obligated to 'take heroic measures to enforce his rights against a recalcitrant' opponent[,]" our case law is clear that the district court has "broad latitude to enforce [its own] local rules." Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 53 n.8 (1st Cir. 2014). Moreover, it's not necessarily an abuse of discretion for the district court to deny a discovery motion without a showing of due diligence that the parties attempted to meet and confer in good faith on any outstanding discovery. See Rios v. Centerra Grp. LLC, 106 F.4th 101, 122 (1st Cir. 2024) (finding that the district court didn't abuse its discretion when it denied a Rule 56(d) motion that lacked a showing of good cause or due diligence in pursuing the desired information). But even if we were to conclude it was an abuse of discretion to so harshly penalize Hernández for her certification failures, we find the district court's further explanations for jettisoning her Rule 56(d) motion adequately supported its

exercise of discretion. (Though, to be clear, if the district court initially allowed a movant to bypass a local rule, then later changed its position for reasons grounded solely on that same rule, it should provide a thorough explanation for its switcharoo. See In re Stericycle Sec. Litig., 35 F.4th 555, 567 (7th Cir. 2022) (explaining that a district court's discovery decision may be an abuse of discretion where it "clearly appears to be arbitrary" (quoting Kuttner v. Zaruba, 819 F.3d 970, 974 (7th Cir. 2016))).)

To kick-start our review of the district court's remaining reasons, we need to conjure up the five requirements of a proffer that accompanies a Rule 56(d) motion: (1) authoritativeness; (2) timeliness; (3) good cause; (4) utility; and (5) materiality. In re PHC, Inc. S'holder Litig., 762 F.3d at 144 (quoting Resolution Tr. Corp., 22 F.3d at 1203); see also Emigrant Residential LLC, 37 F.4th at 725.

Hernández undoubtedly satisfied the first (authoritativeness) and the second (timeliness) requirements because a statement under penalty of perjury accompanied the Rule 56(d) motion that was filed shortly after the government moved for summary judgment. See Paterson-Leitch Co., 840 F.2d at 988 (stating that the authoritativeness requirement may be satisfied by a statement under penalty of perjury or by written representations of counsel); see also Resolution Tr. Corp., 22 F.3d at 1204 (finding that authoritative statements by an attorney

- 22 -

satisfy the authoritativeness requirement and that a party will satisfy the timeliness requirement so long as it invokes Rule 56(d) within a reasonable time following receipt of a motion for summary judgment). But from there, Hernández goes up a creek without a paddle.

We focus our review on the third requirement of "good cause" because the absence of that -- which is apparent here -- is "reason enough to deny Rule 56(d) discovery." Emigrant Residential LLC, 37 F.4th at 725-26. To demonstrate "good cause" Hernández had to show that she wasn't afforded "a full and fair opportunity to obtain relevant facts" earlier in her case and throughout the history of the litigation. Id. at 726; see also In re PHC, Inc. S'holder Litig., 762 F.3d at 143 (quoting Resolution Tr. Corp., 22 F.3d at 1203).

The record indicates, and Hernández professes that, she had been asking for the aforementioned information as early as February 2022. And in response, the government offered to meet and confer about her request for this information as early as March 2022. But instead of taking the government up on its offer or seeking discovery of that information through other means, Hernández continued to sporadically request the information via email ahead of the discovery deadline. It wasn't until June 2023 -- almost five months after the discovery deadline came and went and two weeks before the dispositive motions were due -- that

Hernández filed a motion to compel the information. So for 15 months (from March 2022 to June 2023, to be exact), Hernández was on notice that the government objected to the production of the information and that it was willing to meet and confer. Despite having "a full and fair opportunity" during that time frame to utilize the discovery devices at her disposal in a timely fashion, her discovery pleas lingered in a digital void. Emigrant Residential LLC, 37 F.4th at 726. That she waited for as long as she did -- without an explanation as to why below or on appeal -- to materialize her pleas in the form of a motion to compel followed by a Rule 56(d) motion is in stark contrast to movants who "demonstrate an authentic need for" additional time not previously afforded to them in getting information they need to effectively respond to a summary judgment motion. Resolution Tr. Corp., 22 F.3d at 1203; see also In re PHC, Inc. S'holder Litig., 762 F.3d at 143.

Based on the record before us, Hernández failed to demonstrate good cause in support of her Rule 56(d) motion. We thus find that the district court did not abuse its discretion in denying the motion. See Emigrant Residential LLC, 37 F.4th at 726 ("When a party has had a full and fair opportunity to obtain relevant facts earlier in a case and has forgone that opportunity, there will seldom be good cause to grant the party's request for additional discovery through the medium of Rule 56(d).").

- 24 -

## B. The MSPB Decision and Retaliation

We turn next to Hernández's claim that the district court erred in granting the government's summary judgment motion. Typically, as we've previously mentioned, we review a district court's grant of summary judgment de novo, giving the case a fresh look to assess whether the summary judgment movant (here, the government) is entitled to judgment as a matter of law based on the undisputed facts. MacRae v. Mattos, 106 F.4th 122, 132 (1st Cir. 2024), cert. denied, 145 S. Ct. 2617 (2025). We view the undisputed facts in the light most favorable to the summary judgment nonmovant (here, Hernández) and draw all reasonable inferences in her favor. Id. But this is an atypical case, and our de novo review comes with a twist. Here's why.

We start off with a refresher. Recall that Hernández invoked her rights under the CSRA to appeal her termination of employment to the MSPB. She alleged that (1) she was terminated in retaliation for taking part in protected conduct under Title VII, (2) her termination for insubordination was not supported by a preponderance of the evidence, and (3) her termination was an exceedingly unreasonable penalty. But, au contraire, the MSPB found that (1) the DEA did not retaliate against her, (2) her actions did indeed amount to insubordination, and (3) her termination was appropriate. Unsatisfied, Hernández took her case to the district court. The district court agreed with the MSPB,

granted summary judgment for the government, and dismissed Hernández's case with prejudice.  Before we explain why we agree with the MSPB and the district court, we must provide some necessary context about how MSPB decisions can wind up in the federal courts -- a framework of some complexity.

The CSRA permits federal employees to appeal particularly serious personnel actions taken against them, including a removal from employment, to the MSPB, an entity created under the CSRA to review certain serious personnel actions. Kloeckner v. Solis, 568 U.S. 41, 44 (2012); see also Perry v. Merit Sys. Prot. Bd., 582 U.S. 420, 422 (2017).  "An appeal to the MSPB, however, may also complain of adverse action taken, in whole or in part, because of discrimination prohibited by another federal statute, for example, Title VII of the Civil Rights Act of 1964." Perry, 582 U.S. at 424.  By the same token, an appeal to the MSPB may complain of an adverse action allegedly taken in retaliation for a protected activity.  See Crowe v. Wormuth, 74 F.4th 1011, 1033-35 (9th Cir. 2023).  And when that happens, the resulting case becomes a "mixed case," because it complains of both a serious personnel action *and* a prohibited action under Title VII.  Perry, 582 U.S. at 424; see also Crowe, 74 F.4th at 1034-35.  To pursue a mixed case, employees can take several different procedural routes provided by the CSRA.  Id.  For simplicity's sake, we'll only detail the route that Hernández took.

- 26 -

An employee may bring claims directly to the MSPB, and if unsatisfied by the MSPB's decision, they can seek judicial review in federal district court -- as Hernández did. Id. at 426; see also Kloeckner, 568 U.S. at 56. Once in federal district court, the mixed case's claims "are subject to distinct standards of review." Sher v. U.S. Dep't of Veterans Affs., 488 F.3d 489, 499 (1st Cir. 2007). Discrimination and retaliation claims are reviewed by the district court de novo, whereas nondiscrimination and nonretaliation claims are reviewed under the ordinary standard of review for administrative decisions, meaning they will only be set aside "if the MSPB decision was '(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" Id. (citing 5 U.S.C. § 7703(c)); see also Hernández v. Garland, No. CV 21-1091 (JAG), 2024 WL 1420741, at *3 (D.P.R. Mar. 31, 2024) (quoting Robinson v. Duncan, 775 F. Supp. 2d 143, 157 (D.D.C. 2011) (cleaned up)).

And in the event the district court grants summary judgment in a mixed case and the matter comes to us on appeal, we review the administrative record for the nondiscrimination and nonretaliation claims directly, "applying the same standard of review to that record that the district court applied," id., and

- 27 -

we review the district court's grant of summary judgment de novo, Crowe, 74 F.4th at 1035.

The resulting case here is thus a mixed case because Hernández challenges her termination for insubordination (the serious personnel action) and alleges that it was done out of retaliation. With the schematics behind us, we turn to Hernández's arguments on appeal. We will first address her challenge to the MSPB's decision to uphold her termination, before moving on to her claim of retaliation under Title VII.

### i. The MSPB's Decision to Uphold Hernández's Termination for Insubordination

Hernández contends that the MSPB's decision to uphold her insubordination charge wasn't supported by a preponderance of the evidence and, therefore, her termination was unreasonable. The government disagrees and claims that there is ample evidence to support the MSPB's conclusions, especially since the MSPB relied on Hernández's own testimony in addition to other record evidence.

"In determining whether the outcome in an adjudication before an administrative agency such as the MSPB is arbitrary and capricious we do not substitute our judgment for that of the agency but rather only seek to ensure that the decision was reasonable and rational." Kelliher v. Veneman, 313 F.3d 1270, 1276 (11th Cir. 2002); see also Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015). And, again, "we review the administrative record directly,

- 28 -

applying the same standard of review to that record that the district court applied." Sher, 488 F.3d at 499-500.

Here, the district court reviewed Hernández's challenge to the MSPB's decision under the substantial evidence standard, and so do we. Sher, 488 F.3d at 500. "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Under this standard, we will not "contravene the agency's factfinding unless a reasonable adjudicator would be compelled to reach a contrary conclusion." Atieh, 797 F.3d at 138 (quoting Agyei v. Holder, 729 F.3d 6, 13 (1st Cir. 2013)). And from our review of the record, we find that the MSPB's findings were supported by and grounded in substantial evidence.

The government provided the MSPB with two specific occurrences supporting Hernández's insubordination charge: (1) she failed to communicate with Joseph by phone or in person as she was repeatedly requested to do so, particularly in an email from Donahue on October 11, 2017; and (2) she failed to communicate with Joseph when she had a coworker communicate with Joseph on her behalf. At the MSPB hearing, Hernández argued that she never received the October 11, 2017, email and that she had a coworker

communicate with Joseph because he had created a hostile work environment.

In reaching its determination to sustain the insubordination charge, the MSPB relied heavily on the record, Hernández's written response to her removal, and Hernández's testimony at the MSPB hearing. It found that Hernández "willfully and intentionally refused to obey an authorized order of a superior" because she received written directives on how to communicate with Joseph as her immediate supervisor, she ignored those directives when she either failed to communicate with Joseph or communicated with him through other people, and she couldn't satisfactorily perform her duties while giving Joseph what the MSPB described as "the silent treatment." The MSPB also found that her testimony at the hearing was inconsistent and contradictory. For example, the MSPB noted that Hernández testified that she received Donahue's instructions to communicate directly with Joseph, but then later testified that she never received Donahue's email with those orders contrary to one of her earlier admissions. And although Hernández testified that she had a coworker communicate with Joseph on her behalf because of the ongoing hostile work environment, when asked to describe acts taken by her supervisors to create a hostile work environment, she failed to do so.

The record supports the MSPB's conclusion that Hernández received directives to communicate with her supervisors through particular mediums, she failed to do so, and, as a result, was terminated. Hernández's rebuttal that the orders from her superiors were "unreasonable, arbitrary, and applied selectively and unfairly to her" do not compel us to a contrary conclusion. See id. (explaining that the substantial evidence standard requires deference to an agency's factfinding "unless a reasonable adjudicator would be compelled to reach a contrary conclusion" (quoting Agyei, 729 F.3d at 13)). First, we decline Hernández's invitation to second-guess the MSPB's credibility determination regarding her inconsistent representations on whether she received Donahue's email. Credibility determinations are not the forte of appellate tribunals, and regardless, our review of the record reveals the same inconsistencies that troubled the MSPB with nothing to warrant a different perspective now. Second, Hernández's references to her certified timesheets do not carry the evidentiary weight she proclaims. These timesheets are themselves difficult to interpret, but even accepting Hernández's interpretation that they show that Joseph authorized her "Leave Without Pay," they remain contrary to Joseph's report -- which the MSPB found "not in dispute" -- wherein he stated Hernández failed to follow his orders to communicate directly with him. And lastly, Hernández's claim that her refusal to communicate with Joseph

directly (despite being ordered to do so) was "to protect herself from the further intensification of the discriminatory and retaliatory hostilities in her work environment" is without record support. Just as the MSPB found, the "vaguely-asserted hostile environment" Hernández alleges remains only that, allegation sans record evidence.

Thus, we conclude the MSPB's decision is supported by substantial evidence, and we reject Hernández's claim.

### ii. Retaliation under Title VII

Before we get into the specifics of Hernández's retaliation claim, we offer another primer on the burden-shifting framework governing Title VII claims that will aid our forthcoming resolution.

Title VII prohibits an employer from retaliating against an employee who files a Title VII discrimination charge. Serrano-Colon v. U.S. Dep't of Homeland Sec., 121 F.4th 259, 272 (1st Cir. 2024); see also 42 U.S.C. § 2000e-3(a). To establish a prima facie claim of retaliation, a plaintiff must prove that (1) they engaged in conduct protected by Title VII; (2) they were subjected to an adverse action that would dissuade a reasonable employee from engaging in protected conduct; and (3) there is a causal connection between the protected conduct and the adverse employment action. Id. at 272-73.

From there, the burden shifts to the employer to "articulate a legitimate, non-retaliatory reason for its employment decision[s]." Id. at 273 (quoting Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 26 (1st Cir. 2004)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). And if the employer is successful in doing so (a low hurdle, as Hernández recognizes), the burden shifts back to the plaintiff once more to point to specific facts and offer evidence that the reasons were "a sham or pretext intended to cover up . . . retaliatory motive." Calero-Cerezo, 355 F.3d at 26; see also Sher, 488 F.3d at 507.

Because the government has articulated legitimate, nonretaliatory reasons for its employment decision, even if Hernández made out a prima facie case, she would still need to provide evidence that each of the government's proffered reasons for her termination were pretextual. See Sher, 488 F.3d at 507-08. As we will explain, she has not met the latter burden. Thus, assuming (generously) that Hernández has made a prima facie showing, we affirm the district court's entry of summary judgment because she has not put up evidence to show the government's reasoning for her termination was a sham. We'll explain.

The government asserts -- and the record shows -- that Hernández was terminated on charges of insubordination and lack of candor. To support her argument that the government's reasoning for her termination was pretextual, Hernández first points out

- 33 -

that the MSPB decided not to sustain the lack of candor charge against her. According to Hernández, this means the lack of candor charge cannot serve as a legitimate and nonretaliatory reason for her termination. And building off that premise, she contends that the insubordination charge alone cannot justify her termination because (again, according to her) there was no insubordination in the first place. Hernández also adds that her inability to access crucial discovery stunted her ability to show pretext, and because that "key discovery" would have bolstered her evidentiary showing, Hernández asks us to infer that the unproduced discovery would have been unfavorable to the government.

While "there is no 'mechanical formula' for finding pretext," Che v. MBTA, 342 F.3d 31, 39 (1st Cir. 2003) (quoting Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)), Hernández "must have adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive underlying h[er] dismissal," Serrano-Colon, 121 F.4th at 273 (quoting Harrington v. Aggregate Indus.-Ne. Reg., Inc., 668 F.3d 25, 31 (1st Cir. 2012)). Her attempt to do so merely rehashes her qualms against the MSPB's finding of insubordination, and for many of the same reasons, Hernández's argument that her termination was pretextual due to a lack of insubordination does not pass muster.

The record shows that the government terminated Hernández for disregarding instructions to communicate directly with her supervisor, and Hernández fails to offer competent record evidence that the instructions she received were illegal, unreasonable, arbitrary, or applied selectively to her as she claims. Hernández testified to receiving Donahue's instructions to communicate directly with Joseph regarding her absences and medical leave as early as October 2017. She also testified that she ignored these instructions to avoid problems with Joseph. And while that may be her prerogative, the DEA's internal policies, which were cited in Hernández's removal letter, clearly state that DEA employees must "follow the lawful orders, directions, and policies of supervisors, managers, on-scene commanders, and/or more senior officials." See Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 116 (1st Cir. 2024) ("Title VII does not render employers powerless to enforce nondiscriminatory workplace rules, as '[a]n employer remains entitled to loyalty and cooperativeness from employees.'" (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 230 (1st Cir. 1976))); see also Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (finding that the government had a legitimate, nonretaliatory reason to terminate an employee who failed to show up to work despite having exhausted his leave and to meet the terms of his conditional appointment as a federal

employee); see also Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 111 (1st Cir. 2006)(finding that an employee's failure to show up to work after a set date constituted a valid reason for her termination). Likewise, the timesheets we discussed earlier do not prove that Hernández followed orders, particularly in light of Joseph's report and Hernández's own testimony to the contrary. And (again) Hernández has not pointed to record evidence of a hostile work environment as she alleges, leaving us with no basis to conclude the instructions to communicate with her supervisor were unlawful.[8] Therefore, Hernández has failed to establish, by way of record evidence, that the government's decision to terminate her employment for insubordination was pretextual.

Additionally, Hernández doesn't offer any evidence (or argue the existence thereof, as the government points out) to suggest that the lack of candor charge was not a legitimate, nonretaliatory reason that the government relied on when it terminated her. Despite the MSPB's determination not to sustain Hernández's lack of candor charge, the government could have nonetheless relied on that charge to justify her termination. See Sher, 488 F.3d at 508 (finding that, regardless of the MSPB's

_____

[8] Given our earlier holding regarding discovery, this absence of record evidence does not lead us to any different conclusions as Hernández requests.

decision on the matter, a charge upon which termination was based "may still serve as a legitimate, nondiscriminatory justification for the adverse employment action" so long as the employee doesn't offer evidence that suggests otherwise). In other words, that the MSPB did not rely on lack of candor as a reason to affirm Hernández's discharge does not necessarily mean that the DEA terminated her employment based on a retaliatory motive prohibited by Title VII. That leaves another legitimate, nonretaliatory reason offered for her termination for which Hernández has made an inadequate showing of pretext. See id.

In sum, the district court did not err in granting summary judgment for Hernández's Title VII claim of retaliation, and we reject her claims here as well.

### III. Conclusion

For the foregoing reasons, we **affirm** the district court's decision.